# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| HJALMAR RODRIGUEZ, Jr., | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 5:17-cv-387 (MTT) |
| DEREK CLUPPER, *et al.*, | ) |
| Defendants. | ) |

## ORDER

Before the Court are two Recommendations from United States Magistrate Judge Charles H. Weigle, one recommending denying the Plaintiff's motion to amend his complaint (Doc. 202) and the other recommending denying the Plaintiff's motion to sever his secondary due process claim (Doc. 225). Docs. 218; 247. The Plaintiff has objected to both Recommendations. Docs. 221; 259. Pursuant to 28 U.S.C. 636(b)(1), the Court has considered the objections and made a de novo determination of the portions to which the Plaintiff objects.

## I. DISCUSSION

**A.　First Recommendation**

Regarding the first Recommendation to deny the Plaintiff's motion to amend his complaint, the Plaintiff points out several "errors," none of which change the conclusion reached by the Magistrate Judge. First, the Plaintiff contends the Magistrate Judge erred by misconstruing his motion to amend as if the Plaintiff was seeking to rehash the same, previously dismissed, supervisory liability claim against Defendant Chatman.

Doc. 221 at 2.  According to the Plaintiff, the supervisory liability claim he now seeks to bring against Defendant Chatman is "distinctively different."  *Id.*  The Court disagrees.  It is clear from the record that this supervisory liability claim is simply building upon what was originally pled in the initial complaint.  *See* Doc. 1 at 13 (the Plaintiff's alleging that, despite his filed grievance, Defendant Chatman condoned the abusive and assaultive actions of Defendant Clupper).  Thus, the Court concludes the Magistrate Judge did not err in finding that the Plaintiff's allegation that Defendant Chatman took actions to "cover-up the assault upon the Plaintiff by Defendant Clupper" is not new and has previously been ruled on.[1]  Doc. 218 at 7-8.

Nonetheless, to support his allegation of the cover-up, which, again, is not new, the Plaintiff offers "additional evidence" that he ostensibly discovered only through discovery.  Doc. 221-2 at 2.  This evidence appears to be an incident report submitted by Defendant Kyles on January 17, 2014.  Doc. 221-11 at 3.  In the report, Defendant Kyles states that on December 19, 2013, Defendant Clupper "reported to" him that the Plaintiff "tried to force his hands through flap as [Defendant Clupper] was trying to secure it."  *Id.*  The Plaintiff contends that Defendant Clupper violated Georgia Comp. R. & Regs. § 125-3-2.07(c) and SOP IIB08-0001 because Defendant Kyles, who "played no part in the use of force," filed the incident report instead of Defendant Clupper.  Docs. 221-2 at 2; 221-3 at 1; 221-4 at 1.  However, nowhere in the Georgia Rules and Regulations or the Georgia Department of Corrections (GDC) Standard Operating Procedures (SOP) is there language requiring the officer who used force to file an

---

[1] The Court also agrees with the Magistrate Judge's finding that the Plaintiff's allegations of Defendant Chatman being "completely indifferent" and covering up the actions of Defendants Powell, Logan, and Burnside were not "newly discovered" and have previously been ruled on.  Doc. 218 at 8.

incident report.  *See* Docs. 221-12 at 3; 221-15 at 11.  Rather, a report need only be prepared by "the Correctional Officer(s) or employee(s) *involved* in each such incident," and by the "senior Official in charge of the incident."  *Id.* (emphasis added). Clearly, as the incident report states, Defendant Kyles was on duty on December 19, 2013, and thus was the official in charge on that specific date.[2]  He also was involved in the incident by virtue of Defendant Clupper *reporting* to him what had occurred.  Thus, it is clear Defendant Clupper was not in violation of Georgia Comp. R. & Regs. § 125-3-2.07(c) or SOP IIB08-0001.

The Plaintiff also argues that Defendant Chatman violated the Georgia Rules and Regulations and GDC SOP because "it took 3.5 weeks for Warden Chatman to review the incident report" and Defendant Chatman "never forwarded the incident report to the Field Director, not the Commissioner, and specifically not to the Internal Investigation Unit."  Doc. 221-3 at 1-2.  However, again, the language provided in the Georgia Rules and Regulations and GDC SOP makes clear that Defendant Chatman was not in violation of the rules and procedures.  As an initial matter, the Georgia Rules and Regulations and GDC SOP do not state that the warden must review the incident report within 72 hours of the incident; they merely state that the incident report shall be submitted or forwarded to the warden within that time frame.  Docs. 221-11 at 4; 221-12 at 3 (Georgia Comp. R. & Regs. § 125-3-2.07(c)); 221-15 at 11 (SOP IIB08-0001).  Simply put, the fact that the warden reviewed the report weeks after the incident does not necessarily mean the report was never forwarded to Defendant Chatman within the required time frame.  But even assuming a corrections officer did not forward the report

---

[2] In his latest motion to amend, the Plaintiff even acknowledges that Defendant Kyle was the officer in charge.  Doc. 202 at 5.

to Defendant Chatman within 72 hours of the incident, this merely amounts to an "isolated occurrence," which is insufficient to notify Defendant Chatman of widespread abuse. *See Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) (holding that "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than *isolated occurrences*") (emphasis added).

Moreover, the incident report seems to suggest that the incident was minor in nature. *See* Doc. 221-11 at 3 ("Medical from GDCP was notified and stated since inmate was not in any distress at the time he could be checked in the morning."); *see also* Doc. 221-13 at 3 (SOP IIA04-0002 defining "minor incidents" as "those activities that are considered to be within the normal routine at prisons/centers and would not cause any adverse public concern or notoriety. Examples of such incidents would be certain non-serious inmate injuries that can be addressed/treated by the local facility medical staff. . ."). Thus, while the incident report does not state that the incident was forwarded for investigation—or for that matter, to the Field Operations Manager—this was likely due to the fact that the incident was considered minor in nature and therefore did not require an investigation. *See* Doc. 221-13 at 4, 5 (SOP IIA04-0002 stating that the "Warden/Superintendent will make the determination as to whether the incident is major or minor in nature" and "will forward any *major incident report* to the appropriate Field Operations Manager in accordance with IK01-0001") (emphasis added); *see also Arthur v. Comm'r, Ala. Dep't of Corr.*, 680 F. App'x 894, 911 (11th Cir. 2017) (noting courts "must accord adequate deference to the judgment of the prison authorities") (quotation marks and citations omitted).

In sum, the Plaintiff's "additional evidence" of the cover-up regarding the incident report is still insufficient to establish supervisory liability. Accordingly, to the extent the Plaintiff seeks relief under Federal Rule of Civil Procedure 60(b)(2) for newly discovered evidence, that request is **DENIED**. Doc. 221-5 at 1.

The Plaintiff also challenges the Magistrate Judge's alternative finding that the amendment would be futile. Docs. 221-1 at 1; 218 at 8. According to the Magistrate Judge, the amendment would be futile because, even though the Plaintiff argues Defendant Chatman did not forward the Plaintiff's grievance against Defendant Clupper to the Internal Investigations Unit (IIU), the GDC SOP "does not place the burden on the warden" to do so. Doc. 218 at 8-9. As support, the Magistrate Judge quotes a portion of SOP IIB05-0001, which states, "At any time before the Warden's Grievance decision is delivered to the offender, the Warden *may* refer the matter to the Internal Investigations Unit." *Id.* at 9 (emphasis added). Focusing on the word "may," the Magistrate Judge reasoned that this quoted portion grants the warden "wide discretion on whether to handle grievances alleging the use of physical force internally, or whether to submit the grievance to the Internal Investigations Unit." *Id.* However, directing the Court's attention to the paragraph following the quoted portion, the Plaintiff argues that Defendant Chatman does have the burden. Doc. 221-1 at 2. The paragraph reads, "If an offender files a grievance involving sexual assault or physical force involving non-compliance with Department policies; such actions automatically end the grievance process. These grievances are automatically forwarded through the Scribe application to Internal Investigation Unit and/or the PREA Coordinator for review and whatever action is deemed appropriate." Doc. 40-3 at 11. First, while the Plaintiff is correct in

- 5 -

that there are two distinct instances where a grievance is automatically forwarded to the IIU, it is not at all clear from the quoted paragraph whether the burden is placed on the warden to forward that grievance in those instances.  In fact, the paragraph states, passively, that the "grievances are automatically forwarded *through the Scribe application*," and makes no mention that the grievances are forwarded "by the warden." This seems to suggest that there is an entirely separate process in place for forwarding grievances that allege sexual assault or physical force.  Moreover, even assuming the burden is placed on the warden to automatically stop the grievance process and forward it to the IIU, the mere fact that the Plaintiff's grievance brought to light the allegedly violative conduct does not rise to a claim of supervisory liability.  *See Larson v. Meek*, 240 F. App'x 777, 780 (10th Cir. 2007) ("[D]enial of the grievances alone is insufficient to establish personal participation in the alleged constitutional violations."); *Spore v. Rogers*, 2015 WL 5046582, at *5 (M.D. Ga. 2015) (quoting *Larson*).  Accordingly, the Court agrees with the Magistrate Judge that the Plaintiff's amendment would be futile. *See Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (noting an amendment need not be allowed "where amendment would be futile") (citation omitted).

      The Plaintiff's two remaining objections merit little discussion.  First, the Plaintiff points out that "contrary to the Magistrate's and Defendants['] aqusations [sic], Plaintiff has not filed 6 previous amended complaints."  Doc. 221-5 at 2.  However, the exact number of times the Plaintiff has moved to amend is immaterial; the point is that the Plaintiff has had many opportunities to amend his complaint, and justice does not require allowing the Plaintiff to amend any more than he already has, particularly given that his amendment, as discussed above, would be futile.

Second, the Plaintiff objects to the Magistrate Judge's previous order on motions related to discovery issues. *See generally* Doc. 217. Specifically, the Plaintiff asks the Court to reconsider the order regarding his motions for extension of time to complete discovery (Docs. 200; 204); motion for a conference with the Court regarding discovery disputes (Doc. 205); motion to compel (Doc. 207); motion for an extension of time (Doc. 211); and motion for a stay (Doc. 212).[3] Doc. 221-6 at 1. The Court construes this objection as a motion for reconsideration. Pursuant to 28 U.S.C. § 636(b)(1)(A), the Court may reconsider any pretrial order of a magistrate judge "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." The Plaintiff has failed to show that the Magistrate Judge's order was clearly erroneous or contrary to law. Moreover, it appears the motion for reconsideration is moot, because discovery in this case has closed and the Plaintiff has moved for partial summary judgment.[4] Doc. 235. Accordingly, the Plaintiff's motion for reconsideration is **DENIED**.

**B.  Second Recommendation**

In the second Recommendation, the Magistrate Judge recommends denying the Plaintiff's motion to sever his "secondary due process claim" because that claim "has more in common with Plaintiff's due process claim in *Rodriguez I*" (which is one of eleven cases that have been filed by inmates in Tier III of the Special Management Unit (SMU) of Georgia Diagnostic and Classification Prison). Doc. 247 at 2. This "secondary due process claim" appears to be that Defendants Powell and Logan kept

---

[3] The Court construes Docket Number 212, which is styled as a "Request for a Stay Order on the Time Limit in re Due Dates of Dispositive Motions" as a motion for an extension of time to file dispositive motions and not a motion to stay proceedings. Doc. 212.

[4] In his objection, the Plaintiff has also moved the Court to stay the proceeding pursuant to Rule 62(b)(4) until the Court has ruled on the objection and request for reconsideration. Doc. 221 at 1. The Court has made its ruling. Accordingly, the motion for a stay is **DENIED as moot**.

the Plaintiff in disciplinary isolation without providing a meaningful review process. Doc. 259 at 3. According to the Plaintiff, the secondary due process claim is "more in line with *Rodriguez II*" because it supports the Plaintiff's retaliation claim in *Rodriguez II*, the alleged retaliatory conduct being that Defendants Powell and Logan, as a result of the Plaintiff filing a grievance about a "sham" disciplinary report, which was later dismissed, continued to keep the Plaintiff in isolation without providing a meaningful review process. *Id.* In essence, the Plaintiff contends that his secondary due process claim and retaliation claim "can't exist without the other." *Id.* at 4.

That is simply wrong. While the facts alleged in both claims may be related, the claims are nonetheless separate and independent of each other. *See O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011) ("To establish a First Amendment retaliation claim, a prisoner need not allege the violation of an additional separate and distinct constitutional right; instead, the core of the claim is that the prisoner is being retaliated against for exercising his right to free speech."). In other words, the Plaintiff is not precluded from asserting his retaliation claim in this case merely because he has asserted his secondary due process claim in another case. And the converse is true— the Plaintiff can certainly pursue his secondary due process claim in *Rodriguez I*, wherein, as the Plaintiff acknowledges, he has alleged the "overall widespread violations of procedural and substantive due process of the whole SMU confinement." Doc. 259 at 3. Accordingly, as the Court had previously ruled, the Plaintiff's Fourteenth Amendment due process claims, including the "secondary due process claim," will remain in *Rodriguez I*.[5] Doc. 185 at 2.

---

[5] In his objection to the second Recommendation, the Plaintiff also mentions that the "Magistrate's order in den[y]ing Plaintiff[']s request to have the Marshals Service effect service upon parties outside the

## CONCLUSION

The Court has reviewed both Recommendations and the Plaintiff's objections, and the Court accepts the findings, conclusions, and recommendations of the Magistrate Judge. The Recommendations (Docs. 218; 247) are **ADOPTED** and made the order of this Court. Accordingly, the Plaintiff's motion to amend (Doc. 202), motions for reconsideration (Docs. 221; 259), and motion to sever (Doc. 225) are **DENIED**. The Plaintiff's motion for a stay (Doc. 221) is **DENIED as moot**.

**SO ORDERED,** this 20th day of July, 2018.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT

---

pleading was overly misunderstanding." Doc. 259 at 5-6. It seems the Plaintiff is referring to Docket Number 249, in which the Magistrate Judge denied the Plaintiff's motion for reconsideration regarding the waiver of his discovery costs (Doc. 232). Doc. 249 at 1. The Court construes this part of the objection as a motion for reconsideration of Docket Number 249. In that order, the Magistrate Judge did not find credible the Plaintiff's contention that the Court improperly overdrew $41.30 from the Plaintiff's account. *Id.* at 2. The Magistrate Judge then stated that even assuming that amount was overdrawn, it would "not be enough to cover the costs of serving even one of Plaintiff's numerous subpoenas." *Id.* at 3. The Plaintiff argues in his objection that he did not intend for the Marshals Service to physically serve the subpoenas but rather intended them to serve the subpoenas by certified mail using his $41 in filing fee cost. Doc. 259 at 6. But, as the Magistrate Judge pointed out, that amount still would not be sufficient. Accordingly, the Plaintiff's Motion for Reconsideration (Doc. 259) is **DENIED**.