IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

HJALMAR RODRIGUEZ, Jr., )
 )
        Plaintiff, )
 )
    v. ) CIVIL ACTION NO. 5:17-cv-387 (MTT)
 )
DEREK CLUPPER, *et al.*, )
 )
        Defendants. )
 )

## ORDER

In a 31-page Recommendation, United States Magistrate Judge Charles H. Weigle recommends denying the Plaintiff's motion for partial summary judgment (Doc. 235) and granting in part and denying in part the Defendants' motion for summary judgment (Doc. 233). Doc. 289 at 1. The Recommendation states the relevant facts in detail, and the Court does not repeat them here. Very generally, the Plaintiff's claims arise from three incidents. One involves the alleged use of excessive force by an officer when he slammed a "tray flap"—a 5-inch by 12-inch opening in the Plaintiff's cell door—onto the Plaintiff's hand and the alleged subsequent inadequate medical care for his hand injury. *Id.* at 2; Doc. 233-2 at 7:14-17. The second involves the alleged retaliation against the Plaintiff for his use of the prison grievance system. *Id.* Finally, the third incident involves the alleged inadequate medical care for a bullet that was stuck inside the Plaintiff's leg. Doc. 289 at 2-3. The Magistrate Judge recommends that the Plaintiff's deliberate indifference claim related to his hand injury against Defendant Burnside be dismissed and his remaining claims proceed to trial. *Id.* at 1. The

remaining claims are: (1) an excessive force claim against Defendant Clupper; (2) retaliation claims against Defendants Clupper, Kyles, Powell and Logan; and (3) a deliberate indifference claim against Defendant Burnside related to the embedded bullet in the Plaintiff's leg.  *Id.*  Both the Plaintiff and the Defendants have objected to the Recommendation.[1]  Docs. 293; 294.  Pursuant to 28 U.S.C. § 636(b)(1), the Court has considered the objections and made a de novo determination of the portions of the Recommendation to which the parties object.[2]   For the following reasons, the Recommendation (Doc. 289) is **ADOPTED**.

In their objection, the Defendants "do not object to the recommendation regarding Plaintiff's medical deliberate indifference claims" against Defendant Burnside.

---

[1] The Court granted the parties a 10-day extension of time to file objections and set the deadline to February 25, 2019.  Doc. 290.  The Defendants timely submitted their objection.  Though the Plaintiff's objection was docketed on March 4, 2019, he states on the "Certificate of Service" page of his objection that he served his objection upon the Court on February 25, 2019.  Doc. 294 at 4.  Assuming that is true, his objection is also timely submitted.

[2] In their motion for summary judgment, the Defendants summarily argue they are entitled to qualified immunity on all of the claims because the Plaintiff "cannot prove a violation of any right" and, in the alternative, "none of the alleged violations were clearly established at the time they purportedly occurred." Doc. 233-1 at 20-21.  However, they do not object to the Magistrate Judge's findings regarding the issue of qualified immunity.  Pursuant to 28 U.S.C. § 636(b)(1), the Court concludes those findings are not clearly erroneous.  As discussed below, viewing the evidence in the light most favorable to the Plaintiff, the Court concludes that questions of fact remain regarding the Plaintiff's Eighth Amendment claim for excessive force when Defendant Clupper allegedly slammed, without justification, the tray flap onto the Plaintiff's hand.  Thus, because the Plaintiff has alleged facts sufficient to survive a motion for summary judgment on his Eighth Amendment excessive force claim, the Defendants are not entitled to qualified immunity with respect to that claim.  *See Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002) (noting that when a plaintiff alleges facts sufficient to survive a motion for summary judgment on his Eighth Amendment excessive force claim, that ends the qualified immunity inquiry) (citation omitted).  The Plaintiff has also alleged sufficient facts to survive a motion for summary judgment on his retaliation claims and deliberate indifference claim related to the embedded bullet.  And as the Magistrate Judge points out, it is clearly established under Eleventh Circuit precedent that inmates have the right to be free from retaliation for filing grievances concerning the conditions of their imprisonment and to avoid needlessly suffering pain due to inadequate medical care.  Doc. 289 at 2, 29 (citing Eleventh Circuit decisions that clearly establish the relevant principles of law that apply here); *see also Terrell v. Smith*, 668 F.3d 1244, 1256 (11th Cir. 2012) (observing that plaintiffs may show a constitutional right was clearly established through a "broader, clearly established principle [that] should control the novel facts [of the] situation") (quotation marks and citation omitted).  Accordingly, the Defendants are not entitled to qualified immunity on the Plaintiff's excessive force claim, retaliation claims, and deliberate indifference claim involving the embedded bullet.

Doc. 293 at 2. Instead, they argue the Magistrate Judge erred in recommending summary judgment be denied on the Plaintiff's excessive force and retaliation claims because the Magistrate Judge relied on alleged facts not supported by the record. *Id.* On the contrary, it is clear from the Defendants' objection that the Defendants either do not understand the reasoning behind the Magistrate Judge's findings or are unfamiliar with the record, or both.

For example, to rebut the Plaintiff's excessive force claim, the Defendants contend there is no evidence that the "Plaintiff broke his left pinky finger." [3] *Id.* That is true, given that the hand at issue is the Plaintiff's *right* hand. Doc. 233-2 at 18:22-4, 19 at 11-12 (the Plaintiff testifying at his deposition that he felt pain on his right hand, not his left). Assuming the Defendants meant to say the Plaintiff's *right* pinky finger, their argument still fails.

It is undisputed that on December 19, 2013, Defendant Clupper closed a "tray flap" onto the Plaintiff's right hand. As a result, the Plaintiff suffered injuries. Specifically, the Plaintiff stated the following at his deposition:

> Q: These shooting pains that you mentioned, where do you feel them in your hand, just all over or specific—
>
> A: From the right side of—the right side of my hand up to my pinky finger. It was my right hand—
>
> Q: And the pinky finger is the one that you think was broken?
>
> A: —yes, ma'am.
>
> Q: Do you think anything else was broken in the incident?

---

[3] The Defendants also point out that "there is no testimony from a medical care provider or other expert that the healed fracture was caused by the try [sic] flap incident." Doc. 293 at 2. But rather than introducing testimony to prove just that point, the Defendants rely on the lack of evidence of the Plaintiff breaking his "left" pinky finger.

A: I wouldn't know.

Doc. 233-2 at 18:22-8. Over a year later, an x-ray of the Plaintiff's right hand revealed a healed fracture of the "4th metacarpal" or "ring" finger. Doc. 113-2 at 11. Given these facts, the Defendants seem to believe that because the x-ray results do not show that the Plaintiff's right pinky finger was broken and because the Plaintiff did not say at his deposition that his right "metacarpal" or "ring" finger was broken, that undercuts his excessive force claim. Doc. 293 at 2.

However, as the Plaintiff acknowledged at his deposition, "it felt" like his hand was broken; he did not know, and certainly cannot be expected to know, whether his fingers, including his "metacarpal" or "ring" finger, were actually broken. Doc. 233-2 at 18:12-15. All he knew was that on a scale of 1 to 10, with 10 being the most extreme, the pain level was a 10 for what he described as a "swelled up" and "purple-ish" hand. *Id.* at 10:5-13. Moreover, there is additional evidence to connect the tray flap incident to the broken "ring" finger. Though the Defendants rely only on the Plaintiff's deposition testimony, the Plaintiff, in one of his medical requests, stated that due to the incident, "it hurts to bend" his fingers, including his "right pinky and ring finger." Doc. 116-5 at 3. Thus, given the Plaintiff's testimony, subsequent grievances, medical records and medical service requests, a jury could reasonably find that the Plaintiff sustained a fractured metacarpal bone on his right hand during the tray flap incident.

The Defendants also argue that because the record shows the prison enforces a strict prohibition against "bucking the flap" and that the Plaintiff "bucked the flap," the Magistrate Judge erred in concluding otherwise. Doc. 293 at 3-4. The Court disagrees. Contrary to the Defendants' assertion that the Magistrate Judge "discounted Plaintiff's

own sworn testimony," the Magistrate Judge did consider the Plaintiff's deposition testimony in concluding a jury could reasonably find that the Plaintiff did not "buck the flap" and that the prison did not regularly enforce its prohibition against "bucking the flap." Docs. 289 at 15, 24; 293 at 4. At his deposition, the Plaintiff explained that "bucking the flap" means "[n]ot letting the officer close the flap."[4] Doc. 233-2 at 10:20-23. The Plaintiff then recalled an instance in which he "bucked the flap" to get a supervisor's attention. *Id.* at 11:20-25. According to the Plaintiff, inmates usually "buck the flap" to get a supervisor to come to their wing because "any time an officer is getting ready to use force or needs to use force," that officer must first notify a supervisor. *Id.* at 9:3-6, 10:2-8. In that previous occasion, everything went smoothly for the Plaintiff. He placed his hand on the tray flap, an officer radioed his supervisor to come to the Plaintiff's cell, and after the Plaintiff and the supervisor talked, the supervisor addressed the Plaintiff's concern. *Id.* at 11:1-7.

Thinking the same would happen here, the Plaintiff placed his hand on the tray flap so that Defendant Clupper, who allegedly had been ignoring him, would contact his supervisor. *Id.* at 7-8. But rather than calling his supervisor, Defendant Clupper allegedly "slam[med]" the tray flap onto the Plaintiff's hand without giving sufficient warning. *Id.* at 9:4-7. The parties do not dispute that the Plaintiff placed his hand on the tray flap. However, as the Magistrate Judge points out, a jury could reasonably find that the Plaintiff placed his hand on the tray flap not to prevent Defendant Clupper from closing the flap but to get Defendant Clupper's and his supervisor's attention. Doc. 289

---

[4] Defendant Kyles's affidavit confirms this definition of "bucking the flap." Doc. 233-4 ¶¶4-5. As discussed below, this affidavit is the only one attached to the Defendants' motion for summary judgment that is signed and notarized.

at 24. A reasonable jury could also find that the Plaintiff, after getting Defendant Clupper's attention, had little or no opportunity to remove his hand until after Defendant Clupper had already closed and reopened the flap. In short, there are genuine factual issues not only as to whether the Plaintiff "bucked the flap" but also as to whether there was even a need or authority to use force, particularly given the evidence that the prison did not regularly or consistently enforce its prohibition against "bucking the flap," at least with respect to the Plaintiff, and Defendant Clupper did not contact his supervisor or give a meaningful warning before closing the tray flap onto the Plaintiff's hand.

Finally, as to the retaliation claim, the Defendants argue that because the Plaintiff admitted that he "bucked the flap" and that "bucking the flap" is a serious violation resulting in an inmate's automatic removal to Phase 4 (the most restrictive phase of the Georgia Diagnostic and Classification Prison's Special Management Unit), no reasonable juror could find that the Plaintiff's removal to Phase 4 was unwarranted. Doc. 293 at 4-5. That argument is unavailing. First, as discussed, while the Plaintiff did place his hand on the tray flap, there is a genuine dispute of material fact as to whether the Plaintiff "bucked the flap," as defined by the parties. Moreover, while the Plaintiff testified that he knew other inmates had been "automatically sent" to Phase 4 for "bucking the flap" (Doc. 233-2 at 16), that was not an "admission" that the Plaintiff believed *he* would automatically be removed. In fact, in the previous occasion, the Plaintiff was not automatically removed to Phase 4 for "bucking the flap." One plausible explanation for why he was treated differently from other inmates could be that the Plaintiff, unlike other inmates, did not try to prevent the officer from closing the flap but instead engaged in what he called "a peaceful protest" when placing his hand on the

flap. Doc. 233-2 at 7:14-18. Another explanation may be that removal to Phase 4 for "bucking the flap" depends on which officer is in charge—in other words, it is entirely discretionary.[5] In sum, when viewing the evidence in the light most favorable to the Plaintiff, a jury could reasonably find the Defendants retaliated against the Plaintiff by placing and keeping him in Phase 4.

Regarding the Plaintiff's objection, the Plaintiff raises two issues. First, the Plaintiff argues that the Defendants have submitted and relied upon affidavits that were neither signed nor notarized and thus, these documents should not be considered as evidence.[6] Doc. 294 at 2. The Plaintiff is correct that out of five affidavits attached to the Defendants' motion for summary judgment, only one—the affidavit of Defendant Kyles—is signed and notarized. Docs. 233-3; 233-4; 233-5; 233-6; 233-7. Although the Plaintiff first raised this issue in response to the Defendants' motion for summary judgment, the Defendants neither provided an explanation for why the affidavits were not signed or notarized nor attempted to cure that deficiency. Doc. 281-1 at 8-9. That is unacceptable. Accordingly, the Court does not consider as proper evidence the unsigned and unnotarized affidavits.[7] *See WTI, Inc. v. Jarchem Indus., Inc.*, 2012 WL

---

[5] This discretionary nature of sending inmates to Phase 4 is further evidenced by Defendant Powell's response to the Plaintiff's request for admission. The request for admission reads: "There existed no legit reason that was considered . . . in regards to bringing and leaving Mr. Rodriguez in E-wing [Phase 4] and making him restart [the] S.M.U. program for no other reasons but to teach Mr. Rodriguez about filing grievances." Doc. 235-2 at 50. Defendant Powell's initial response was, in relevant part: "I deny that Plaintiff was confined in E-wing for the purpose of 'teaching [Plaintiff] about filing grievances.'" *Id.* However, in his supplemental response, Defendant Powell stated: "Admitted. Powell misread Plaintiff's handwriting in his initial response." *Id.* As the Magistrate Judge notes, while this admission is not enough to warrant judgment as a matter of law for the Plaintiff, it comes pretty close. Doc. 289 at 26. And not surprisingly, the Defendants do not address this admission in their objection.

[6] The Plaintiff is a frequent and sophisticated filer. How the Defendants' attorneys could have thought the Plaintiff would not call them out for filing and relying on worthless affidavits is, at present, a mystery.

[7] While the Court does not consider these affidavits as evidence, that does not affect the Court's adoption of the Recommendation. The Court, in reaching its conclusions, relied on evidence such as the Plaintiff's

3101656, at *4 (N.D. Ga. July 30, 2012) (citation omitted) ("This document is neither signed nor notarized and thus cannot be considered as proper evidence at the summary judgment stage."). The Court also hereby orders the Defendants to show cause why they should not be sanctioned for their failure to sign and notarize their affidavits, given that their motion for summary judgment cites and relies on those affidavits and that they had notice of the deficiency from the Plaintiff's response to their motion.

The Plaintiff's second issue is whether Defendant Burnside acted with deliberate indifference with regard to his hand injury. Doc. 294 at 2-3. The Plaintiff contends that Defendant Burnside, "as a supervisor of the medical department at the SMU[,] should have subject[ive] knowledge of [the Plaintiff's] num[e]rous medical request." *Id.* at 3. The Court disagrees. There is no evidence in the record that Defendant Burnside, a GDCP physician, was aware of the Plaintiff's hand injury or the Plaintiff's medical-service requests and prison grievances prior to a December 9, 2014 treatment session—and by then, the hand injury was no longer objectively serious. *See* Docs. 233-2 at 17 (Plaintiff saying he told Defendant Burnside about his hand injury at the December 2014 treatment session but at that time, his hand "wasn't swollen any more"); 113-2 at 7 (Defendant Burnside's notes from a September 24, 2014 treatment session showing Plaintiff's complaints of "fever" and "chills" but no complaints about Plaintiff's right hand). Nor is there evidence that Defendant Burnside acted unreasonably after becoming aware of the injury. *See* Doc. 113-2 at 10-11 (Defendant Burnside's notes from a March 10, 2015 treatment session showing "No Problem Seen" regarding the Plaintiff's right-hand injury and ordering an x-ray of the Plaintiff's right hand).

---

deposition testimony (Doc. 233-2), the signed and notarized affidavit of Defendant Kyles (Doc. 233-4), and a previously submitted affidavit of Defendant Burnside, which was signed and notarized (Doc. 113-2).

Accordingly, the Plaintiff's deliberate indifference claim against Defendant Burnside related to the hand injury fails as a matter of law.[8]

## CONCLUSION

The Court has reviewed the Recommendation and the parties' objections and accepts the findings, conclusions, and recommendations of the Magistrate Judge. For the foregoing reasons, the Recommendation (Doc. 289) is **ADOPTED** and made the order of the Court. Accordingly, the Plaintiff's motion for partial summary judgment (Doc. 235) is **DENIED**, and the Defendants' motion for summary judgment (Doc. 233) is **GRANTED in part** and **DENIED in part**. The Plaintiff's deliberate indifference claim against Defendant Burnside related to his hand injury is **DISMISSED with prejudice**. His remaining claims for trial are: (1) an excessive force claim against Defendant Clupper; (2) retaliation claims against Defendants Clupper, Kyles, Powell and Logan; and (3) a deliberate indifference claim against Defendant Burnside related to an embedded bullet in the Plaintiff's leg. The Defendants shall show cause by **March 25, 2019** why they should not be sanctioned for submitting unsigned and unnotarized affidavits. The Court has considered requiring the Defendants to explain further the situation discussed in footnote five but concludes that probably would not be enlightening.

**SO ORDERED,** this 18th day of March, 2019.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT

---

[8] Again, this conclusion is not tainted by either the void affidavits or the misconduct of the Defendants' counsel in submitting those void affidavits.